UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| ROBERT FARRINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 1:23-CV-00362-LEW |
| | ) | |
| FAIRFIELD POLICE DEPT., et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SABASTIAN GUPTILL'S PARTIAL MOTION TO DISMISS AND
SERGEANT TORI TRACY'S MOTION TO DISMISS THE COMPLAINT
WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Officer Sabastian Guptill moves to dismiss Count II (Section 1985 Conspiracy) for failure to state a claim upon which relief can be granted and Count IX (Intentional Infliction of Emotional Distress) as time-barred by the applicable statute of limitation. Defendant Sergeant Tori Tracy moves to dismiss Plaintiff's Complaint in its entirety for failure to state a claim upon which relief can be granted. In support of this Motion, Defendants Guptill and Tracy state the following.

1

## INTRODUCTION[1]

Plaintiff Robert Farrington brings this civil rights action, alleging constitutional violations that arise out of various law enforcement agencies' efforts to arrest him on November 23, 2019 after the Fairfield Police Department (FPD) received a report from the victim that Plaintiff had committed domestic violence assault. In short, Plaintiff alleges that the FPD improperly entered a temporary want or temporary warrant into the NCIC system through Somerset County Dispatch. FPD then contacted Sgt. Tracy of the Augusta Police Department (APD) to locate and arrest Plaintiff, the suspect wanted for the domestic violence assault, who was believed to be residing in Augusta. Sgt. Tracy instructed three Augusta police officers to respond to Plaintiff's residence. Compl. ¶¶ 124-25. The three Augusta officers, including Officer Guptill, drove to Plaintiff's residence and attempted to make contact with him by knocking on the front and side doors for approximately eight and a half minutes. *Id*. ¶¶ 60-62. As they were about to depart, one of the officers saw an interior light go on and the officers walked back to the residence. *Id*. ¶ 71. Plaintiff alleges that Officer Guptill walked to the side of the residence, saw Plaintiff with a firearm, and shot Plaintiff with his service weapon through the sliding glass door. *Id*. ¶¶ 82-83. Plaintiff was struck and suffered injuries. *Id*. ¶¶ 84, 86.

The Complaint asserts three claims against Sgt. Tracy. Count II alleges that Sgt. Tracy, among others, conspired to violate Plaintiff's constitutional rights when she relayed FPD's request that Farrington be arrested and ordered APD officers to respond to Plaintiff's home, knowing that the FPD had issued a temporary warrant for Farrington. *Id*. ¶¶ 43, 124. Count V alleges municipal liability against Sgt. Tracy, the Augusta Police Department, and Chief Jared Mills pursuant to 42

---

[1] When reviewing a Rule 12(b)(6) motion, this Court "accept[s] as true all well-pleaded facts alleged in the complaint." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2011). Defendants therefore do the same solely for purposes of this motion to dismiss.

U.S.C. § 1983.  Count VI alleges that Sgt. Tracy violated Plaintiff's right to be free from excessive force, as established by the Maine Constitution, pursuant to the Maine Civil Rights Act (MCRA). *Id*. ¶¶ 163-64.  The facts pled against Sgt. Tracy do not support a cognizable claim under any of these legal theories against her, and Plaintiff's Complaint against Sgt. Tracy should therefore be dismissed.

Officer Guptill moves to dismiss two of the four Counts asserted against him.[2]  Count II alleges that Officer Guptill conspired to violate Plaintiff's constitutional rights when he responded to Plaintiff's home.  Plaintiff has likewise failed to plausibly plead a Section 1985 Conspiracy against Officer Guptill. Count IX alleges against Officer Guptill a state law tort claim for Intentional Infliction of Emotional Distress (IIED), which is barred by the two-year statute of limitation applicable to tort claims against governmental employees.

## FACTUAL BACKGROUND

The Complaint alleges that on or about November 23, 2019, Augusta Police Sergeant Tori Tracy relayed to fellow Augusta police officers information that the APD had learned that evening from the FPD.  Compl. ¶¶ 42-43.  Having learned from FPD that there was a temporary warrant[3] issued for Robert Farrington, Sgt. Tracy informed three Augusta law enforcement officers of that temporary warrant, provided those officers with Farrington's home address, and instructed those officers to arrest Farrington. *Id*. ¶¶ 41, 43, 124.  Sgt. Tracy knew that an arrest warrant for

---

[2] Count I alleges a Fourth Amendment violation under 42 U.S.C. § 1983 and Count VI alleges a violation of the Maine Civil Rights Act against Officer Guptill. He has not moved to dismiss those two counts against him.

[3] The Complaint alleges that a "temporary warrant," sometimes referred to as a "temporary felony want," can be "entered into the state law enforcement system when a law enforcement agency has a need to take prompt action to establish a 'want' entry for the apprehension of a person who has committed, or the officer has reasonable grounds to believe has committed, a felony level crime and who may flee across jurisdictional boundaries and circumstances preclude the immediate procurement of an arrest warrant." Compl. ¶¶ 28, 31.

Farrington had not yet been received, and she also knew that there was no search warrant authorizing entry of Farrington's home. *Id*. ¶ 125.

Upon receipt of the information and command from Sgt. Tracy, Augusta Officers Guptill, Paradis, and Lowell then drove in separate cruisers to Plaintiff's residence. *Id*. ¶ 44-46. The Augusta officers followed Sgt. Tracy's order to respond to Plaintiff's residence despite knowing they did not possess an arrest warrant, search warrant, or any exception that would allow a warrantless search of Plaintiff's property or a warrantless arrest of Plaintiff. *Id*. ¶ 125.

## LEGAL STANDARD

"[A] complaint will survive a motion to dismiss when it alleges 'enough facts to state a claim to relief that is plausible on its face.'" *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This plausibility standard . . . 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 70 (1st Cir. 2021). In evaluating the sufficiency of the complaint, the Court "need not credit a plaintiff's '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alston*, 988 F.3d at 571. "Dismissal for failure to state a claim is appropriate if the complaint fails to set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 303 (1st Cir. 2008).

## ARGUMENT

**A. Plaintiff Does Not Adequately Allege a Civil Rights Conspiracy (Count II) against Sgt. Tracy and Officer Guptill.**

In Count II, Plaintiff asserts a conspiracy to violate Plaintiff's constitutional rights under 42 U.S.C. § 1985(3)[4] against Defendant Willhoite, a police officer with the FPD, Defendant Doe I, an unnamed employee of the Somerset County Regional Communications Center, and Sgt. Tracy and Officer Guptill of the APD.

To plead an actionable claim under 42 U.S.C. § 1985(3), Plaintiff "must allege the existence of a conspiracy, allege that the purpose of the conspiracy is 'to deprive the plaintiff of the equal protection of the laws,' describe at least one overt act in furtherance of the conspiracy, and 'show either injury to person or property, or a deprivation of a constitutionally protected right.'" *Alston*, 988 F.3d at 577 (quoting *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008). Plaintiff has failed to allege these elements and therefore fails to state a cognizable claim under Section 1985.

Plaintiff has failed to plausibly allege the existence of a conspiracy or that the purpose of any purported conspiracy was to deprive Plaintiff of his civil rights.  To plead a civil rights conspiracy, Plaintiff must "plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of his civil rights." *Alston*, 988 F.3d at 577-78 (quoting *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019).  In this regard, "[v]ague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss." *Id*.  Here, where Plaintiff has alleged only that Sgt. Tracy (i) communicated with the FPD regarding the fact that a "temporary felony want" had been issued for Farrington and (ii) relayed FPD's request that the APD look for Farrington on the basis of that probable cause, Plaintiff has failed to plausibly plead that Sgt. Tracy was involved in a joint effort to deprive Plaintiff of his constitutional rights. *See Alston*, 988 F.3d

---

[4]  Plaintiff has not alleged a civil rights conspiracy under any particular subsection of Section 1985; however, it appears that 42 U.S.C. § 1985(3) is the only subsection that could possibly be implicated.

at 577 (dismissing a Section 1985 claim where the Complaint did not allege an agreement related to the plaintiff, "let alone" an agreement related to the deprivation of the plaintiff's rights). Plaintiff's allegations against Officer Guptill fall short for the same reason: Plaintiff has failed to allege that Officer Guptill was part of an agreement to deprive Plaintiff of his rights. *See id*. Indeed, Plaintiff merely alleges that Officer Guptill, along with two other Augusta officers, received information from Sgt. Tracy that she had received from the FPD and responded to Plaintiff's residence in separate cruisers.

There are no allegations that would permit a reasonable inference that Officer Willhoite, Doe I, Sgt. Tracy, and Officer Guptill reached an agreement, motivated by some discriminatory animus, to deprive Plaintiff of his constitutional rights. *See id*. (explaining that, although a civil rights conspiracy plaintiff is entitled to reasonable inferences, "he is not entitled to the benefit of speculation unanchored to sufficiently supportive facts."). Plaintiff does not allege any facts suggesting that there was a plan or the existence of an agreement among the alleged conspirators. Rather, Plaintiff alleges that Officer Willhoite contacted another law enforcement agency with information and that a member of that law enforcement agency relayed the information to patrol officers. Officer Guptill then went to Plaintiff's house based upon that information. There are no facts from which the Court could infer that there was a preconceived scheme or plan, "let alone" one to deprive Plaintiff of his rights.

In fact, inter-agency communications are permissible, and law enforcement agencies are entitled to rely on each other's representations of probable cause. *See United States v. Gordon*, 23 F. Supp. 2d 79, 83 (D. Me. Sept. 18, 1998) (determining that the Fairfield Police reasonably relied on information made known to them by the Skowhegan Police because "[p]olice officers cooperating with others on an investigation are entitled to rely upon each other's knowledge of

facts when forming the conclusion that probable cause exists"). Plaintiff acknowledges that temporary felony wants are entered on the basis of probable cause, *see* Compl. ¶ 31, and an arrest based on another agencies' representation of probable cause is unequivocally permissible, *United States v. Winchenbach*, 197 F.3d 548, 555 (1st Cir. 1999) (explaining that, when determining whether there was probable cause for arrest, courts follow the "fellow officer" rule in which "the focus is upon the collective knowledge possessed by, and the aggregate information available to, all the officers involved in the investigation"). Because Plaintiff alleges nothing other than permissible and routine communications between Sgt. Tracy and another law enforcement agency, Plaintiff has failed to plausibly allege any conversation or agreement between Sgt. Tracy and any other defendant that was purposed to deprive Plaintiff of his rights. Similarly, because Plaintiff alleges routine intra-agency communications between Sgt. Tracy and Officer Guptill, Plaintiff has failed to plausibly allege an agreement to deprive Plaintiff of his constitutional rights. *Cf. Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868, 198 L. Ed. 2d 290 (2017) (recognizing concern that "agents of the same legal entity are not distinct enough to conspire with one another. . . .").

Finally, even if there was an agreement "with the conspiratorial purpose to deprive the plaintiff of the equal protection of the laws,"—which here the facts alleged unequivocally do not bear out—Plaintiff still fails to state a claim for conspiracy under Section 1985 because he has not plausibly pled that any such agreement was "motivated by some discriminatory animus." *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (dismissing a civil rights conspiracy claim where the complaint did not support an inference of an agreement motivated by discriminatory animus). Indeed, to allege a civil rights conspiracy, "the agreement must involve 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.*

(citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Accordingly, Plaintiff's conspiracy claim against Sgt. Tracy and Officer Guptill should be dismissed.

**B. Plaintiff Does Not and Cannot State a Plausible Municipal Liability Claim Against Sgt. Tracy (Count V).**

Count V alleges *Monell* liability for violation of the Fourth Amendment under 42 U.S.C. § 1983 against the City of Augusta Police Department, Chief Mills and Sgt. Tracy. Compl. ¶ 22. Under the Supreme Court's decision in *Monell v. Department of Social Services of City of New York*, "liability can be imposed on a local government only where that government's policy or custom is responsible for causing the constitutional violation or injury." *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978)). "Municipal liability 'cannot be based on respondeat superior but requires independent liability based on an unconstitutional policy or custom of the municipality itself.'" *Abdisamad v. City of Lewiston*, 960 F.3d 56, 60 (1st Cir. 2020) (quoting *Dirrane v. Brookline Police Dep't*, 315 F.3d 65, 71 (1st Cir. 2002)). In short, *Monell* established that the government as an *entity* could be responsible under § 1983. *Monell* liability is therefore inapposite to Sgt. Tracy.

Here, Plaintiff alleges that Sgt. Tracy is an employee of the Augusta Police Department. Compl. ¶ 16. Plaintiff has not pled that Sgt. Tracy is a final policymaker for the City of Augusta, nor would such an inference be reasonable in light of the fact that the Complaint also names the Chief of Police, Jared Mills, as a defendant. The Complaint is devoid of any facts which would allow an inference that Sgt. Tracy is a final policymaker such that she, and not the municipality itself, could be held liable for a Fourth Amendment claim under *Monell*.

To the extent the Court reads Count V as alleging official capacity claims, the Plaintiff's municipal liability claim against Sgt. Tracy should be dismissed as superfluous. *See, e.g.*, *Trafford v. City of Westbrook*, 256 F.R.D. 31, 33 (D. Me. 2009) (dismissing official capacity claims against

municipal employees because "an official capacity claim is not necessary when a Section 1983 claim is brought against a municipality because, under *Monell*, local governmental units can be sued for damages or declaratory and injunctive relief").

### C. Plaintiff Fails to Plausibly Plead that Sgt. Tracy's Actions Violated the Maine Civil Rights Act (Count VI).

The MCRA, 5 M.R.S. § 4682, is the mechanism for redressing alleged violations of the Maine Constitution, *see Jackson v. Town of Waldoboro*, 751 F.Supp.2d 263, 275 (D. Me. 2010), and Plaintiff alleges that Sgt. Tracy, among others, violated Plaintiff's right to be free from excessive force under the Federal and Maine Constitutions as well as his right to be free from unreasonable search and seizure under the Federal Constitution, Compl. ¶¶ 162-63.

Section 4682(1-A) of the MCRA provides a private remedy

> [w]henever any person, whether or not acting under color of law, *intentionally interferes or attempts to interfere by physical force or violence against a person, damage or destruction of property or trespass on property or by the threat of [these actions]* with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the state. . . .

5 M.R.S. § 4682 (emphasis supplied); *see also Johnson v. City of Biddeford*, -- F.Supp.3d -- , 2023 WL 2712861, at *31 (D. Me. March 30, 2023) (reciting what is required to prevail under Section 4682(1-A) of the MCRA).[5]

As an initial matter, the facts alleged against Sgt. Tracy unequivocally fail to state—either directly or inferentially—any constitutional violations of the Fourth Amendment or its Maine Constitutional counterpart. Indeed, as discussed, Plaintiff merely alleges that Sgt. Tracy communicated with another law enforcement agency and permissibly relied on its representation

---

[5] Defendant Sgt. Tracy cites to the version of 5 M.R.S. § 4682(1) that was in effect at the time of the events alleged in the Complaint; however, the Maine Legislature recently enacted a new version of Section 4682, effective October 25, 2023, which merely restates the same prior language of § 4682(1) in list-form.

of probable cause.  *See Gordon*, 23 F.Supp.2d at 83.  Additionally, the facts alleged unequivocally

fail to state that Sgt. Tracy used any force against Plaintiff, let alone excessive force. Sgt. Tracy

cannot be liable under the MCRA for the alleged actions of others. *See, e.g.*, *Welch v. Ciampa*, 542

F.3d 927, 936 (1st Cir. 2008) ("[W]e note that "[i]t is axiomatic that the liability of persons sued

in their individual capacities under section 1983 must be gauged in terms of their own actions."

(quoting *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999)).

Moreover, Plaintiff has failed to state a claim under the MCRA against Sgt. Tracy

regardless because he does not and cannot plausibly plead that Tracy "intentionally interfere[d] or

attempte[d] to intentionally interfere" with Plaintiff's rights by the use or threat of violence,

damage or destruction of property, or trespass.  Instead, Plaintiff alleges in only conclusory fashion

that "Defendants intentionally interfered with plaintiff's rights under the Maine and United States

Constitutions by use of physical force and violence against him."  Compl. ¶ 164.  Because Plaintiff

alleges no facts against Sgt. Tracy in support of this conclusory assertion, Plaintiff's MCRA claim

against Sgt. Tracy must be dismissed.  *See, e.g.*, *Bagley v. Raymond Sch. Dep't*, 1999 ME 60, ¶ 10

n.5, 728 A.2d 127 ("The [MCRA] is inapplicable to the claims presented.  It applies when there

has been the use of 'physical force or violence' in an effort to interfere with the exercise of a

constitutional right.  No claim of violence, real or threatened has been presented." (citation

omitted)).

### D.  Plaintiff's IIED Claim Against Officer Guptill is Time Barred

A statute of limitations defense can be considered on a motion to dismiss under Fed. R.

Civ. P. 12(b)(6) "provided that the facts establishing the defense [are] clear on the face of the

plaintiff's pleadings." *Santana-Castro v. Toledo-Davila*, 579 F.3d 109, 114 (1st Cir. 2009)

(quotation and citation omitted). "The key is whether the complaint and any documents that

properly may be read in conjunction with it show beyond doubt that the claim asserted is out of time." *Rodi v. S. New England Sch. of L.*, 389 F.3d 5, 17 (1st Cir. 2004).

Here, it is clear from the Plaintiff's Complaint that his state law tort claim in Count IX is time-barred. All of the allegations against Officer Guptill occurred on or about November 23, 2019. *See* Compl. ¶ 1. Plaintiff alleges that his IIED claim arises from Officer Guptill subjecting him to gunfire on or about that same day. *Id.* ¶ 179. Furthermore, Plaintiff alleges that Officer Guptill is an employee of the Augusta Police Department. *Id.* ¶ 16. Plaintiff's IIED claim is therefore a claim against a governmental employee and is subject to the two-year limitation period under the Maine Tort Claims Act. 14 M.R.S.A. § 8110. Plaintiff filed his Complaint on September 26, 2023, more than three years and ten months after the date Officer Guptill is alleged to have used deadly force against Plaintiff. Because all of the allegations against Officer Guptill are based on events that took place on or about November 23, 2019, Plaintiff's Complaint demonstrates beyond a doubt that Plaintiff's state law tort claim is time-barred and should therefore be dismissed.

## **CONCLUSION**

For the foregoing reasons, Plaintiff fails to state a claim upon which relief can be granted as to Sgt. Tracy and therefore the Complaint should be dismissed in its entirety. Count II against Officer Guptill fails to state a cognizable conspiracy claim, and Count IX is time-barred under the Maine Tort Claims Act. Accordingly, Defendants respectfully request that this Court grant their motion and dismiss the Complaint as to Sgt. Tracy in its entirety and dismiss Counts II and IX as to Officer Guptill.

Dated at Portland, Maine this 4th day of December, 2023.

*/s/ Kasia S. Park* _____
Kasia S. Park, Esq.
Susan M. Weidner, Esq.
*Attorneys for Defendants Tori Traci and*
*Sabastian Guptill*

**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
kpark@dwmlaw.com
sweidner@dwmlaw.com