UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ROBERT FARRINGTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FAIRFIELD POLICE DEPARTMENT )<br>et al., )<br>)<br>Defendants. ) | No. 1:23-cv-00362-LEW |

**ORDER ON MOTION TO DISMISS AND**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

In the early morning hours of November 23, 2019, Augusta Police Officer Sabastian Guptill shot Robert Farrington in his home through a sliding glass door that was not the primary entrance to the home. On September 26, 2023, Farrington filed this civil action not only against Officer Guptill but also against personnel of the Fairfield and Augusta Police Departments and the Somerset Regional Communications Center based on their entry of and/or action upon a temporary felony want prior to the shooting.

The matter is currently before the court on a Motion to Dismiss (ECF No. 18) filed by Officer Guptill and Sergeant Tori Tracy and a Motion for Judgment on the Pleadings (ECF No. 20) filed by Fairfield Chief of Police Thomas Gould and Fairfield Police Officer Dakota Willhoite. The Motions are not dispositive of the entire case, but instead focus on certain claims and defendants. For reasons that follow, the Motion to Dismiss (ECF No.

18) is GRANTED and the Motion for Judgment on the Pleadings (ECF No 20) is GRANTED.

## FACTUAL ALLEGATIONS

The facts are drawn from the allegations in Plaintiff Robert Farrington's Complaint. Farrington's allegations are assumed to be true for purposes of evaluating the Defendants' Motions.

After midnight on the morning of November 23, 2019, Defendant Police Officer Guptill shot Farrington through a sliding glass door that served as a side or rear entrance to his home in Augusta. Farrington was unarmed, though Guptill could see that a firearm was resting on a side table near Farrington. Prior to the shooting, Farrington's fiancée awakened to the sound of pounding on the doors of the house. Frightened by the sounds, she alerted Farrington, who is hard of hearing. Farrington instructed his fiancée to call 911, which she did, and then he left the bedroom to investigate and turned on the lights in the house. Farrington and his fiancée never heard anyone announce that they were members of law enforcement. Farrington came downstairs with a handgun and set it on a side table so he could use both hands to remove a board securing the sliding glass door. Because of the lighting, Farrington was in plain view of Officer Guptill, while, based on a plausible inference from the pleadings, Guptill was outside in the dark and was not visible to Farrington.

Prior to the shooting, in the late evening of November 22, about an hour or so before Farrington was shot, a complainant went into the Fairfield Police Department and reported that Farrington had assaulted her at her home in Fairfield. After speaking with the

complainant and reassuring himself that the complainant was not in immediate danger, Fairfield Police Officer Dakota Willhoite sent the complainant home. Officer Willhoite searched through downtown Fairfield to determine if Farrington was still in the area. Upon concluding that Farrington had left the area, and understanding that Farrington was a resident of Augusta, Officer Willhoite contacted Somerset County Dispatch to request that a temporary felony want be lodged with the National Crime Information Center ("NCIC"). A temporary felony want informs other members of law enforcement that the person who is targeted by the want is suspected of committing a felony and should be apprehended. As alleged, Willhoite's request for entry of a felony want was improper because reasonable grounds were lacking to conclude that the reported domestic incident was a felony. County Dispatch complied with Willhoite's request and lodged the temporary felony want with the NCIC.

After speaking with County Dispatch, Willhoite called the Augusta Police Department to tell them that Farrington was wanted on a temporary felony want. The recipient of his call, Augusta Police Sergeant Tori Tracy, acted on the information and instructed Augusta Police Officers Sabastian Guptill, Brett Lowell, and Aaron Paradis to arrest Farrington at his home in Augusta. The officers drove to Farrington's residence in three separate police cruisers, but they did not activate their cruisers' light bars or sirens, even upon arrival at the residence, and two of the three officers turned off their headlights as they approached the driveway.

Upon arrival, Officers Lowell and Paradis (neither of whom is a defendant in this case) approached the home's main entrance and knocked on the door. Meanwhile, Officer

Guptill went around the side of the home and saw a glass door entrance around the back corner of the residence and knocked on that. After several minutes passed without any response from inside the home, all of the officers returned to their cruisers and planned to leave. However, just as they planned to leave, one or more lights came on in the house. Two of the officers got out of their cruisers and returned to the front door of the residence, but they allegedly did not make it clear that they were members of law enforcement or announce themselves. Officer Guptill proceeded directly back to the glass side (or back) entry door rather than joining the other officers at the main entrance. Upon seeing Farrington through the glass door and the firearm on the side table near his person, Guptill yelled, "He's got a gun! Augusta police!" and immediately opened fire, discharging 12 rounds into the residence, one of which struck Farrington in the hip.

## DISCUSSION

To avoid dismissal, Farrington must plead in his complaint "a short and plain statement of the claim showing that [he] is entitled to relief" against each defendant. Fed. R. Civ. P. 8(a)(2). The complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court will accept all factual allegations as true and consider whether the facts, along with reasonable inferences that may arise from them, describe a plausible, as opposed to merely conceivable, claim. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011); *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). Plausible "means something more than merely possible." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). "[A] well-pleaded complaint may proceed even

4

if it appears that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted). However, it is not enough for a plaintiff merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify why it would be reasonable to find it plausible that the defendant subjected the plaintiff to a harm for which the law affords a remedy. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Farrington's Complaint recites nine counts. In Count I, Farrington alleges a deprivation of his Fourth Amendment rights by Officer Guptill and cites 42 U.S.C. § 1983. In Count II, Farrington alleges a conspiracy to interfere with his civil rights involving Officers Guptill and Willhoite, Sergeant Tracy, and an unknown member of County Dispatch and cites 42 U.S.C. § 1985. In Count III, Farrington asserts a "*Monell* liability" claim[1] against the City of Fairfield Police Department and its Police Chief Thomas Gould. In Count IV, he alleges a "*Monell* liability" claim against Somerset County and certain members of the Somerset Regional Communications Center. In Count V, he asserts a "*Monell* liability" claim against the City of Augusta Police Department, its Chief of Police Jared Mills, and Sergeant Tori Tracy. In Counts VI–VIII, he asserts claims against, respectively, the Augusta Defendants, the Fairfield Defendants, and the Somerset County Defendants for violation of the Maine Civil Rights Act, 5 M.R.S. § 4682(1-A) ("MCRA").

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court "held that although a municipality may not be held liable under a theory of *respondeat superior* for an employee's constitutional violation, it may be held liable when 'execution of [the municipality's] policy or custom ... inflicts the injury' and is the 'moving force' behind the employee's constitutional violation." *Saldivar v. Racine*, 818 F.3d 14, 20 (1st Cir. 2016) (alteration in original) (quoting *Monell*, 436 U.S. at 694).

5

In Count IX, Farrington asserts a claim of Intentional Infliction of Emotional Distress ("IIED") against Officer Guptill.

The challenged counts include Count II (conspiracy to interfere with civil rights, 42 U.S.C. § 1985), Count III (*Monell* liability against Fairfield defendants), Count V (*Monell* liability as to Augusta Sergeant Tracy), Count VI (MCRA as to Augusta defendants), Count VII (MCRA as to Fairfield defendants), and Count IX (intentional infliction of emotional distress). The moving parties are Officer Guptill and Sergeant Tracy, *see* Defendant Sabastian Guptill's Partial Motion to Dismiss and Sergeant Tori Tracy's Motion to Dismiss the Complaint (ECF No. 18), and the Fairfield defendants, *see* Defendants Fairfield Police Department, Chief Thomas Gould, and Officer Dakota Willhoite's Motion for Judgment on the Pleadings (ECF No. 20). Because the motions overlap to an extent, I discuss the arguments for dismissal of the challenged counts on a count-by-count basis.[2]

**A.    Count II**

Both Motions challenge the plausibility of the conspiracy claim in Count II. Farrington concedes that the dismissal of Count II is proper. Pl.'s Ans. to Mots. at 2 (ECF No. 25). Count II will be dismissed as to all defendants.

**B.    Count III–V**

In Counts III, IV, and V, Farrington asserts a theory of "*Monell* liability" based on the allegedly unlawful use of the temporary felony want tool in the context of an

---

[2] The Augusta and Fairfield defendants observe that a municipal police department is not a separate legal entity subject to suit. They are correct. Although the claims against the police departments (Counts III, V, VI, and VII) will be dismissed for other reasons explained herein, the claims are also subject to dismissal as moot because a municipal police department lacks the capacity to be sued. *Dwan v. City of Boston*, 329 F.3d 275, 278 n.1 (1st Cir. 2003); *Henschel v. Worcester Police Dept.*, 445 F.2d 624, 624 (1st Cir. 1971).

investigation of what Farrington alleges was a report of a misdemeanor domestic violence assault. Count III is against the Fairfield defendants; Count IV is against the Somerset County Defendants; and Count V is against the Augusta defendants. As to Count III, Fairfield Police Chief Gould challenges the claim. As to Count V, only Augusta Police Sergeant Tori Tracy challenges the claim, not Augusta Police Chief Mills.[3]

Chief Gould argues that the mere entry of the temporary felony want in the NCIC cannot serve as a basis for liability under 42 U.S.C. § 1983 because Maine law independently authorized the arrest of Farrington on a charge of domestic violence assault, *see* 17-A M.R.S. § 15(1)(A)(5-B), so the use of the temporary felony want did not deprive Farrington of a federal right, such as the right not to be arrested in the absence of probable cause of an arrestable offense.[4]

---

[3] Because of the dismissal of the "police department" defendants, *see* note 2, *supra*, the Police Chiefs and Sergeant Tracy are the remaining defendants on these claims. The Somerset County defendants answered the Complaint (ECF No. 16) without filing a motion to dismiss to challenge the parallel "*Monell* liability" claim in Count IV.

[4] Augusta Sergeant Tori Tracy challenges Count V ("*Monell* liability") to the extent it is asserted against her, individually. Tracy argues, among other things, that it makes no sense to assert a *Monell* claim against her given that a sergeant is not a final policymaker of the City of Augusta, even as to police department matters, and the allegations fail to state facts that would run counter to this basic understanding. Farrington responds that "the claim against Tracy can also lie on the basis of supervisory liability," urges the court to "read the claim in the context not just of the heading," and goes on to theorize about ways in which a reader might construe his Complaint to state a supervisory, deliberate indifference claim that it does not actually state (neither "supervisory" nor "deliberate indifference" appear anywhere in the Complaint, though failure to train Officer Willhoite and the Somerset County Defendants about proper use of a temporary felony want is alleged). Ans. to Mots. at 5–8. Farrington's request for a judicial reimagining of the Complaint is contrary to prudence and ordinary practice. It is a plaintiff's obligation to state claims in his complaint, not the Court's burden to imagine their existence. In any event, the *Monell* theory that it is unconstitutional to use a temporary felony want on an arrestable misdemeanor offense is rejected and would be no more viable as a supervisory liability claim. The failure to train about or follow a regulatory standard applicable to the NCIC might be improper, but it is not *unconstitutional* simply because the system is used to communicate that a suspect is wanted. If Farrington's intent is to allege that Officer Guptill acted the way he did based on his personal failure to appreciate what a felony want is, and that the City of Augusta or Chief Mills might bear liability for a failure to train him, that more focused claim is not stated in the Complaint. Instead,

7

In response, Farrington argues that the *Monell* claim should proceed because he plausibly alleged not only misuse of the temporary felony want tool, but also a custom or policy of doing so that, in this case, led to a constitutional violation. In his view, use of the tool "lends the imprimatur of constitutionality to a process that does not comply with the [C]onstitution." Ans. to Mot. at 3. What he appears to mean is that some police officers might believe that they can make a warrantless felony arrest[5] based on the NCIC entry even though the circumstances might not support it. Farrington also argues that the possible existence of probable cause to arrest him should not be taken as true at this early stage of the proceedings. *Id.* at 4. He alleges that there was "no legal basis" to arrest him. *Id.* at 4–5.

The Fairfield defendants' argument that the allegedly inappropriate entry of the temporary felony want in the NCIC is not a freestanding deprivation of a constitutional right is convincing. After all, the officers were neither more nor less authorized to go to Farrington's home to make an arrest whether Willhoite's probable cause determination[6]

---

Farrington attempts to impose municipal liability based on the mere use of the want, and that theory of liability is a non-starter for the reasons related herein.

[5] No one has attempted to define what is meant by a "felony arrest" as opposed to a "misdemeanor arrest." The distinction between misdemeanors and felonies in relation to warrantless arrests, or what Farrington seems to mean by drawing the distinction, is that it has some bearing on the legal analysis related to the officers' presence at his home in the middle of the night when the lights were off. Ordinarily, the distinction might pertain to an officer's authority to force entry into a home without a warrant, as the exigencies of a situation might create a compelling need for a warrantless entry and odds are that felony offenses would be more likely to give rise to exigencies. *See Lange v. California*, 141 S. Ct. 2011, 2017 (2021). But even probable cause of a felony offense is ordinarily not enough to justify a warrantless entry into the home. *Id.* In this case, based on the allegations, there was neither authority to force an entry nor any actual attempt to force entry. Recall that the officers were preparing to leave the residence until the lights came on.

[6] Contrary to his suggestion, Farrington's Complaint does not plead away the probable cause determination. As alleged, Officer Willhoite "took an in-person report from an alleged victim claiming that Plaintiff Robert Farrington had committed domestic abuse assault against her in her Fairfield home over an hour earlier."

8

pertained to a misdemeanor or a felony. *See* 17-A M.R.S. § 15(1)(A)(5-B) (authorizing officers with probable cause to believe that someone committed domestic violence assault to make a warrantless arrest of that person); *see also Maryland v. Pringle*, 540 U.S. 366, 370 (2003) ("A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause."). And in neither case could they force entry to the home to effectuate an arrest absent exigent circumstances. *See Payton v. New York*, 445 U.S. 573, 587 (1980); *United States v. Winchenbach*, 31 F. Supp. 2d 159, 165–66 (D. Me. 1998).

Nonetheless, the officers could go to Farrington's residence to investigate the alleged assault. *See Florida v. Jardines*, 569 U.S. 1, 8 (2013) ("[A] police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do." (internal quotation marks omitted)). Furthermore, based on the complainant's report that Farrington assaulted her, Willhoite had probable cause to arrest Farrington without a warrant outside of his residence. *See* 17-A M.R.S. § 15(1)(A)(5-B); *Forest v. Pawtucket Police Dep't*, 377 F.3d 52, 57 (1st Cir. 2004) (explaining "that police officers can justifiably rely upon the credible complaint by a victim to support a finding of probable cause"). Because Willhoite asked the August Police Department to arrest Farrington, his probable cause determination is attributable to the

---

Compl. ¶ 17. Also as alleged, Willhoite called the Augusta Police Department to communicate that he had grounds for Farrington's arrest. Compl. ¶ 41. Farrington complains that the Augusta personnel did not "investigate the allegations," and he alleges that the report was untrue. *Id.* ¶¶ 19, 42. However, he does not cite any authority that the Augusta officers were constitutionally required to do so and could not act on Willhoite's probable cause determination.

9

officers that went to Farrington's residence, so they could arrest Farrington without a warrant, provided that the arrest occurred outside of his residence. *United States v. Balser*, 70 F.4th 613, 621–22 (1st Cir. 2023) (discussing the collective knowledge doctrine); *Payton*, 445 U.S. at 590 ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house."). It is, therefore, something of a tortured inference to find that Willhoite's data entry of a temporary felony want was a freestanding violation of the Constitution such that every defendant who left a fingerprint on or followed up on that NCIC data entry might be liable for any resulting harm (or, even more outlandish, regardless of any resulting harm).

For purposes of a motion to dismiss, a plaintiff may state a plausible claim even if it appears "that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. However, in this scenario Farrington fails to identify any legal authority to support the proposition that use of the temporary felony want system to report probable cause for at least a misdemeanor arrest is unconstitutional. The felony want, standing alone, does not possess talismanic powers of constitutional deprivations. The felony want did not authorize entry into the home and did not authorize a trespass into the curtilage of Farrington's home.[7] Accepting for present purposes that Officer Guptill subjected Farrington to some sort of constitutional deprivation, that deprivation was not the ministerial entry of the temporary felony want into the NCIC but rather the result of Officer

---

[7] As alleged, Officer Guptill might have violated the Fourth Amendment based exclusively on his invasion of the curtilage. *See Florida v. Jardines*, 569 U.S. 1, 6–8 (2013); *French v. Merrill*, 15 F.4th 116, 128–33 (1st Cir. 2021), *reh'g denied*, 24 F.4th 93 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 301 (2022).

10

Guptill's decision making at the scene, resulting in firing several rounds through a sliding patio door in the direction of Farrington and thereby causing him injuries. And to be sure—contrary to Farrington's argument—the allegations in the Complaint in fact do set forth a probable cause scenario for a felony as they plainly relate the report by the female complainant who accused Farrington of assaulting her in her home shortly before. *See* note 6, *supra*. Finally, Farrington has not offered any persuasive authority to support his effort to incorporate into § 1983 litigation the sort of negligence, causation, and supplemental policy considerations that typify the imprecise pleadings and argumentation of state court tort claims. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

For these reasons, Police Chief Gould's request for dismissal of Count III is granted. Sergeant Tracy's request for dismissal from Count V is likewise granted, based both on the foregoing discussion and the discussion in note 4, *supra*. Additionally, because it is ineluctable, the dismissal will also extend to the non-moving Defendant Mills (Count V) and Somerset County Defendants (Count IV).

C.   **Count VI and VII**

In Counts VI and VII, Farrington asserts claims under the MCRA against, respectively, the Augusta defendants and the Fairfield defendants. The Fairfield Defendants and Augusta Sergeant Tracy argue that Farrington fails to state a claim because the MCRA requires a showing that the defendant in question interfered or attempted to interfere with the exercise of the plaintiff's civil rights by means of physical force or

violence or the threat thereof.[8] Farrington responds "that the threat of an unlawful seizure of one's person constitutes a sufficient threat of violence for MCRA's purposes." Ans. to Mot. at 8.

Farrington's MCRA theory does not have any actual grounding in the language of the statute, which requires an individualized assessment of a defendant's actual alleged conduct, which for all of the defendants but Guptill did not involve any violence or threat of violence. Farrington is improperly attempting to expand the reach of the MCRA based on a pseudo supervisory liability assessment borrowed from § 1983 law or a foreseeability assessment borrowed from tort law. *See* 5 M.R.S. § 4682. But the effort does not add up. The officers were authorized to go to Farrington's premises to attempt to make a consensual arrest, not a forced entry arrest, since there was no exigency or other exception to the warrant requirement that would permit them to enter the home, regardless of whether the offense was a felony or a misdemeanor, and, in fact, they did not attempt to enter the home when at first no one responded to their knocking. Given this reality, the moving defendants' conduct associated with logging the temporary felony want or authorizing officers to attempt an arrest did not amount to an act of violence or a threat of violence. Consequently, the MCRA claims are not well stated and will be granted as to all defendants except for Officer Guptill.[9]

---

[8] Sergeant Tracy is the only one of the Augusta defendants to request dismissal of the MCRA claim in Count VI. The Somerset County defendants did not request the dismissal of the MCRA claim in Count VIII.

[9] Farrington cites *Clifford v. MaineGeneral Med. Ctr.*, 81 A.3d 567 (Me. 2014) in support of his MCRA claims. He argues that the Superior Court order under review in *Clifford* establishes that "the threat of an unlawful seizure of one's person constitutes a sufficient threat of violence for MCRA's purposes." Ans. to

**D.     Count IX**

Officer Guptill challenges Count IX (intentional infliction of emotional distress) based on the expiration of the statute of limitation. Farrington fails to respond in any manner concerning Count IX. The failure to respond is deemed a waiver of objection. D. Me. Loc. R. 7(b). Count IX will be dismissed.

### CONCLUSION

The Motion to Dismiss (ECF No. 18) is **GRANTED** and the Motion for Judgment on the Pleadings (ECF No. 20) is **GRANTED**.

The City of Augusta Police Department and the City of Fairfield Police Department are DISMISSED as they are not legal entities subject to suit.

Count II (Conspiracy § 1985) is DISMISSED.

Count III (*Monell*–Fairfield Defendants) is DISMISSED.

Count IV (*Monell*–Somerset County Defendants) is DISMISSED.

Count V (*Monell*–Augusta Defendants) is DISMISSED.

Counts VI (MCRA-Augusta Defendants) is DISMISSED as to Defendants Mills and Tracy. Count VI remains as to Defendant Guptill.

---

Mots. at 8. In *Clifford*, the Superior Court determined that a physician could be found to have deprived a patient of her liberty when she was involuntarily committed to hospitalization and subjected to a strip search, and that the physician's conduct could be considered a threat of violence since hospital orderlies stood by to ensure the patient's compliance. *Id.* at 580 n.14. This case is unlike *Clifford*, as Farrington was never in the custody or power of the moving defendants who challenge the MCRA claims. Furthermore, even the officers who went to Farrington's home did not have any authorization to use violence in the absence of exigent circumstances that might justify it. If adopted, Farrington's view of the upstream causational reach of the MCRA would be governed by a rule of radical foreseeability, and any officer or law enforcement entity who communicated the existence of probable cause to make an arrest would become potentially liable for whatever might go wrong during an arrest made by a law enforcement officer.

Count VII (MCRA–Fairfield Defendants) is DISMISSED.

Count VIII (MCRA–Somerset County Defendants) is DISMISSED.

Count IX (Intentional Infliction of Emotional Distress) is DISMISSED.

SO ORDERED.

Dated this 20th day of May, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge